IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERTRAM HAHN | : |
| Plaintiff, | : |
| vs. | : Case Number: 1:06-CV-0713 (ESH) |
| UNITED STATES OF AMERICA | : |
| Defendant. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF BERTRAM HAHN'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO TRANSFER**

Plaintiff Bertram Hahn ("LTC (Ret.) Hahn"), by and through counsel, submits the following memorandum in support of his opposition to Defendant's Motion to Dismiss, or in the Alternative, to Transfer ("Motion").[1]

**Preliminary Statement**

This is a case filed under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq. for negligent medical treatment that Lieutenant Colonel ("LTC") Retired (Ret.) Hahn received from the health care providers at the Bethesda National Naval Medical Center ("BNNMC") and Walter Reed Army Medical Center ("WRAMC") in May 2000. The initial claim form was supported by two reports from Dr. Jay Meythaler, both of which have been

---

[1] The Defendant's motion is titled "Defendant's Motion to Dismiss, or in the alternative[,] to Transfer." The memorandum in support, however, is titled "Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or in the alternative, For Summary Judgment." Review of the memorandum does not discuss summary judgment, and therefore, Plaintiff's will treat the memorandum as supporting Defendant's Motion to Dismiss, or in the alternative, to Transfer the case to the United States District Court for the District of Maryland.

attached to this memorandum to further explain the basis for the administrative claims and the allegations in the complaint. See Exhibits 1 and 2. The Army took the lead in investigating the claims and they denied the claims on February 1, 2006. See Denial Letter, Exhibit 3. As all administrative remedies were exhausted, on April 19, 2006, LTC (Ret.) Hahn filed suit in the United States District Court for the District of Columbia against the Defendant, United States of America ("Defendant"). Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant now moves this Court to dismiss the Complaint based on lack of subject matter jurisdiction, or in the alternative, pursuant to Fed. R. Civ. P. 12(b)(3), to transfer venue to the United States District Court for the District of Maryland.

### Statement of Facts

LTC (Ret.) Hahn is retired from the United States military. See Declaration of Bertram Hahn, ¶ 3 (hereinafter referred to as "Hahn Decl.", Exhibit 4). On or about May 17, 2000, LTC (Ret.) Hahn presented to BNNMC with severe weakness in his limbs. Id., ¶ 4. By the time LTC (Ret.) Hahn arrived at BNNMC, he was unable to ambulate on his own and had to be lifted out of the vehicle. The health care providers in the emergency room at BNNMC diagnosed LTC (Ret.) Hahn with Guillian-Barre Syndrome ("GBS"). Id., ¶ 5. Heath care providers at BNNMC ordered LTC (Ret.) Hahn to immediately start treatment with intravenous immunoglobulin ("IVIg") for five (5) days. Complaint, ¶ 6 (hereinafter referred to as "Compl.").

Approximately at 5:00 p.m, on May 17, 2000, LTC (Ret.) Hahn was transferred to WRAMC when a bed became available. Hahn Decl., ¶ 6. Once at WRAMC, the health care providers confirmed the original diagnosis. Id., ¶ 7. Treatment with IVIg was started on the morning of May 18, 2000. Id. At this point, due to LTC (Ret.) Hahn's declining condition and

concern that the paralysis may affect LTC (Ret.) Hahn's breathing, LTC (Ret.) Hahn was transferred back to the intensive care unit BNNMC. Id., ¶¶ 8 - 9. The order from WRAMC specifically ordered treatment with IVIg for five (5) days to effectively treat the GBS. Compl., ¶ 8.

Upon transfer to BNNMC, LTC (Ret.) Hahn was admitted to the intensive care unit at BNNMC. Hahn Decl., ¶ 9. LTC (Ret.) Hahn stayed in the intensive care unit until May 21, 2000, at which point he was transferred to the medical ward at BNNMC awaiting return to WRAMC. Id., ¶ 12. On or about May 23, 2000, LTC (Ret.) Hahn was transferred back to the rehabilitation ward at WRAMC from where he was discharged from treatment for GBS in June 2001. Id., ¶¶ 13 - 14.

In June 2001, LTC (Ret.) Hahn began consulting various health care providers to follow up on rehabilitation for his health condition. Id., ¶ 15. The various health care providers asked LTC (Ret.) Hahn about a second administration of the IVIg or whether he had been given a plasma exchange subsequent to the treatment in May 2000. Id., ¶ 16. LTC (Ret.) Hahn advised the health care providers that he had not received any subsequent IVIg treatment or a plasma exchange. Id., at ¶ 17.

LTC (Ret.) Hahn continued to consult with various health care providers regarding his rehabilitation. In August 2003, LTC (Ret.) Hahn traveled to Birmingham, Alabama to meet with Dr. Jay Meythaler at the University of Alabama School of Medicine regarding enrollment in the Clinical Trial Drug Study for GBS. Id., ¶ 18. During the course of his meeting with Dr. Meythaler to be enrolled in the trial drug study, LTC (Ret.) Hahn provided a medical history regarding the previous treatment for GBS that he had received at BNNMC and WRAMC. Id., ¶

19. Dr. Meythaler requested review of LTC (Ret.) Hahn's medical records, and LTC (Ret.) Hahn provided the medical records to Dr. Meythaler. Id.

Three days after meeting Dr. Meythaler, LTC (Ret.) Hahn learned for the first time that he did not receive the standard treatment as ordered in the medical records. Id., ¶ 21. In fact, LTC (Ret.) Hahn only learned at this time that the standard treatment protocol to treat GBS required five days regimen of IVIg. Id., ¶ 22. Further investigation revealed that LTC (Ret.) Hahn only received IVIg treatment for twenty-six hours or less. Id., ¶ 23.

At the time that LTC (Ret.) Hahn was being treated at BNNMC and WRAMC in May 2000, he was not aware that there was a specific order to treat him with IVIg for five days to effectively treat the GBS. Id., ¶ 10. LTC (Ret.) Hahn was not aware of this because he has no medical training, he was in poor health, and was at the time being treated with IVs and by other means. Id., ¶ 11. It was only after his meeting with Dr. Meythaler and upon further investigation, LTC (Ret.) Hahn suspected that the health care providers at BNNMC and WRAMC did not properly treat him for GBS. On September 22, 2003, LTC (Ret.) Hahn wrote a letter to the Patient Affairs Office at WRAMC seeking an explanation as to why he was not given standard treatment for the GBS. Id., ¶ 24.

LTC (Ret.) Hahn did not receive a satisfactory response to his September 22, 2003 inquiry and, as a result, engaged counsel in February 2004 to pursue a possible claim against the United States. On or about February 26, 2004, LTC (Ret.) Hahn filed a claim with the Department of Navy Claims Services and the Department of Army Claims Services. Id., ¶ 26.

The United States Army took the lead in the investigation and denied the claim on February 1, 2006. Compl., ¶ 4; See also Exhibit 3. On April 19, 2006, the instant lawsuit was

4

filed. Defendant now moves this Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or in the alternative, to transfer the case to District of Maryland pursuant to Fed. R. Civ. P. 12(b)(3). For the reasons set forth, infra, the Motion must be denied.

I. **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

    A. **Standard of review on a motion to dismiss for lack of subject matter jurisdiction.**

In determining whether the District Court has subject matter jurisdiction, "[i]t is the plaintiff who bears the burden of demonstrating that the Court has jurisdiction." Cronauer v. United States, 394, F.Supp.2d 93, 96 (D.D.C. 2005), citing Fowler v. District of Columbia, 122 F.Supp.2d 37 (D.D.C. 2000). A complaint can only be dismissed for lack of subject matter jurisdiction only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him from relief." Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983). In reviewing such a motion, the court must accept as true all the factual allegations contained in the complaint. Calloway v. Brownlee, 366 F.Supp.2d 43, 49 (D.D.C. 2005). In making its determination, the court may also look to materials beyond the pleadings to determine if the court has subject matter jurisdiction. Id.; see also Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).

    B. **Argument: The claim against the United States was filed within the two-year limitations period.**

There is no dispute that a claim under FTCA must be filed in writing to the appropriate agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). Otherwise, the claim would forever be barred. LTC (Ret.) Hahn submits that he filed his claim in writing to the

Department of Navy Claims Service and the Department of Army Claims Service within two years after his claim accrued.

Under FTCA, the "statute [of limitations] starts to run (the claim "accrues") at the time a plaintiff has discovered both his injury and its cause." Sexton v. United States, 832 F.2d 629, 633 (D.C. Cir. 1987), citing, United States v. Kubrik, 444 U.S. 111, 100 S.Ct. 352 (1979). This is "true even though [the plaintiff] is unaware that the harm was negligently inflicted." Sexton, at 633, citing, Kubrick, 444 U.S. at 123, 100 S.Ct. at 360. "The rationale of the discovery rule as announced in Kubrick is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." Zeleznik v. United States, 770 F.2d 20, 23 (3rd Cir. 1985). cert.denied, Zeleznik v. United States, 475 U.S. 1108, 106 S.Ct. 1513 (1986). Under the FTCA, a claim for medical malpractice "accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant." Price v. Unites States, 775 F.2d 1491 (11th Cir. 1985).

In the case sub judice, the injury suffered was "extreme mental and permanent neurologic injuries." Compl., ¶ 16. As alleged in the Complaint, this was caused by health care providers failing to provide LTC (Ret.) Hahn with the proper treatment, specifically to provide "appropriate [IVIg] treatment for the standard five days after he was diagnosed with [GBS] on May 17, 2000." Compl., ¶ 16. This allegation of negligence was alleged in the claim form and supported by two reports by Dr. Jay Meythaler, both of which were provided to the Army Claims Service during their investigation of the claim. See Exhibits 1 and 2. This was a fact not

discovered by LTC (Ret.) Hahn until August 2003 when he first met with Dr. Meythaler. Hahn Decl., ¶¶ 19 - 21; Compl., ¶ 5. It was only days after his meeting with Dr. Meythaler that LTC (Ret.) Hahn first became aware that there was any negligence involved in his care and became "armed with the facts about the harm done to him" as a result of that negligence. See Kubrick, 444 U.S at 123, 100 S.Ct. at 358.

In fact, following his discharge for treatment for GBS from WRAMC, LTC (Ret.) Hahn consulted various health care providers to follow up on rehabilitation for his condition. Hahn Decl., ¶ 15. At no time during his consultations with various health care providers was he advised that the health care providers providing him treatment for GBS in May 2000 provided only twenty-six hours of treatment rather than the five days of treatment as required by the protocol for treatment of GBS, and as specifically ordered by the health care providers at WRAMC. Hahn Decl., ¶¶ 15 - 17 & ¶ 10. LTC (Ret.) Hahn never looked at his medical records as he assumed he had been treated appropriately and he was simply dealing with residual neurologic deficits due to the underlying GBS. In fact, there was nothing to be suspicious about at that time. LTC (Ret.) Hahn only learned of the standard treatment protocol to treat GBS and the fact that he had not been treated for the appropriate time after his meeting with Dr. Meythaler in August 2003. Hahn Decl., ¶¶ 22-23.

The meeting in August 2003 with Dr. Meythaler was the first time that he learned of the "wrong" - administration of IVIg for treatment of GBS for a period of twenty-six hours or less rather than for a period of five days as required under the standard of care, the standard treatment

protocol, and as ordered by the health care providers at WRAMC[2]. Armed with these facts, LTC (Ret.) Hahn acted promptly and wrote a letter to WRAMC on September 22, 2003 questioning the medical treatment he received from the Defendant. He received no satisfactory response and, therefore, engaged counsel to pursue a possible claim against the Defendant. It was in August 2003 that LTC (Ret.) Hahn learned that he had not received the IVIg as ordered, and that there was any connection between the failure to give IVIg for five days and his permanent neurologic injury. It should be noted that having GBS can cause permanent neurologic deficit no matter how it is treated. It was only after speaking with Dr. Meythaler that LTC (Ret.) Hahn understood for the first time that his road to recovery from GBS may have been impacted by the treatment he received in May 2000.

August 2003 was the first time that LTC (Ret.) Hahn learned of the facts to put him on notice that a wrong had been committed. With this new information, he investigated further to determine if he was entitled to redress. Shortly thereafter, LTC (Ret.) Hahn filed his claims with the Department of Navy Claims Service and the Department of the Army Claims Service. Hahn Decl., ¶ 26. The claims were filed on or about February 26. 2004, well within the two-years time period in which his claim accrued.

---

[2] There is a nationally published standard treatment protocol for treatment of GBS developed and published by, among others, Dr. Jay Meythaler, Plaintiff's expert who authored the report in support of the claim. See Exhibit 5.

II.  **PLAINTIFF'S OPPOSITION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER TO DISTRICT OF MARYLAND FOR IMPROPER VENUE**

  I.  **Standard of review on a motion to dismiss for improper venue.**

In deciding a motion to dismiss for improper venue, "a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." 2215 Fifth Street Associates, LP v. U-Haul International, Inc., 148 F.Supp.2d 50, 54 (D.D.C. 2001), quoting, Fitts v. Fed. Nat. Mortgage Ass'n, 44 F.Supp.2d 317, 321 (D.D.C. 1999), affirmed, Fitts v. Federal Nat. Mortgage Ass'n., 236 F.3d 1 (D.C. Cir. 2001) (internal citations omitted). Furthermore, "facts must be presented that will defeat plaintiff's assertion of venue." 2215 Fifth Street Associates, LP, at 54, quoting, 5A Charles Alan Wright & Arthur R. Miller, Federal Practices and Procedure: Civil 2d § 1352 (2d ed. 1990).

Under 28 U.S.C. § 1402 (b), in cases in which the United States is a defendant, venue is appropriate in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred. See 28 U.S.C. § 1402(b). In the instant case, venue is appropriate in the United States District Court for the District of Columbia.

  B.  **The United States District Court for the District of Columbia is a proper venue.**

The United States District Court for the District of Columbia is a proper venue for this instant action. Under 28 U.S.C. § 1402(b), in any claims in which the United States is a defendant, venue is appropriate in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

The treatment forming the basis of the instant lawsuit occurred not only in Maryland, as the Defendant concedes but, rather, in both Maryland and the District of Columbia. The Complaint specifically states that the health care providers at BNNMC ordered the IVIg treatment for five days, Compl., ¶ 6; that LTC (Ret.) Hahn was transferred to WRAMC on the same day as he presented to BNNMC, Compl., ¶ 7; that the IVIg started at WRAMC on May 18, 2000, the day after he presented to BNNMC and was transferred to WRAMC, Compl., ¶ 8; that due to space being unavailable at WRAMC, LTC (Ret.) Hahn was transferred back to BNNMC with an order to administer the IVIg treatment for five days to treat the GBS, Compl., ¶ 8; and that the health care providers at BNNMC only provided LTC (Ret.) Hahn with IVIg until May 19, 2000, rather than until May 22, 2000, Compl., ¶ 9. LTC (Ret.) Hahn returned to WRAMC on May 23, 2000, where no medical personnel noticed that he had not received five days of IVIg as was ordered.

Drawing all reasonable inferences from the facts alleged in favor of the LTC (Ret.) Hahn, the treatment that LTC (Ret.) Hahn complains of was a continuing course of treatment that started at BNNMC, then was provided at WRAMC, then back again to BNNMC, and finally back to WRAMC. LTC (Ret.) Hahn was not in a position to pick and choose the location of where he was to be treated for GBS. The only reasonable inference from the facts is that treatment was rendered at both BNNMC and WRAMC which lead to the injuries to LTC (Ret.) Hahn.

Furthermore, as stated by the Court in 2215 Fifth Street Associates, LP, supra, the Defendant has failed to present facts to "defeat plaintiff's assertion of venue." Defendant only relies on ¶ 9 of the Complaint to argue that District of Maryland is the proper venue. Defendant

provides no other facts to defeat the venue selected by LTC (Ret.) Hahn. LTC (Ret.) Hahn submits that he was treated at both BNNMC and WRAMC. LTC (Ret.) Hahn has alleged that the Defendant rendered negligent treatment. While the Complaint may state that "health care provider at BNNMC disregarded the written order from WRAMC," LTC (Ret.) Hahn has adequately plead facts to establish that the negligence to form the basis of the medical malpractice claim was a continuing course of treatment rendered at both BNNMC and WRAMC.

## Conclusion

For the foregoing reasons, Plaintiff Bertram Hahn respectfully requests that this Honorable Court deny the Defendant's Motion to Dismiss, or in the Alternative, to Transfer.

/s/
Karl J. Protil, Jr.