

Department of Physical Medicine and Rehabilitation

Jan. 31, 2005

Karl J. Protil, Jr., Esquire
Shulman, Rogers, Gandal, Pordy & Ecker P.A.
11921 Rockville Pike, Suite 300
Rockville, MD 20852-2743

    Re:   Hahn v. U.S.A.

Dear Mr. Protil:

    I have reviewed the medical records from the Bethesda Naval Hospital, Walter Reed Army Medical Center (WRAMC), Bolling Air Force Base, and University of Alabama-Birmingham Medical Center pertaining to Mr. Bertram Hahn and have concluded that the health care providers responsible for Mr. Hahn's treatment for Guillain-Barre Syndrome (GBS) breached the standard of care. Specifically, they failed to provide the appropriate IVIG treatment in both timeliness and in not providing 5 treatments over 5 days as is the standard of care. for Mr. Hahn's GBS and that failure more likely than not contributed to Mr. Hahn's increased disability and functional weakness from GBS.

    By way of background, training, and experience, I have substantial experience with the treatment of GBS. I have written extensively on GBS and was a co-author of a Report of the Quality Standards Subcommittee of the American Academy of Neurology titled Practice Parameters: Immunotherapy for GBS. <u>See</u> attachment A. From 9/02-9/04, I was the principal investigator for a grant to investigate treatment of chronic GBS using 4- Aminopyridine. The study took place at the University of Alabama-Birmingham, and Mr. Hahn took part in the study. It was during this study that I had an opportunity to review Mr. Hahn's medical records and realized that the treatment for GBS at WRAMC breached the standard of care. A copy of my C.V. is attached. <u>See</u> attachment B.

Rehabilitation Institute of Michigan
RM 822
261 Mack Blvd.
Detroit, MI 48201
313.966.0444
Fax 313.745.1063



On May 10, 2000, Mr. Hahn was seen at Bolling Air Force for nausea, fever, chills, weakness, dizziness, and body aches and was diagnosed with a viral syndrome. The record is sparse and there is very little history contained in the record. On May 12, 2000, Mr. Hahn called the family practice clinic complaining of a persistent fever. It was not until May 16, 2000 that Mr. Hahn was called back. The record indicates that he was to be seen in the Bolling Air Force Base clinic the next day, which would have been May 17, 2000. Unfortunately, when Mr. Hahn awoke on May 17, 2000, he was stumbling and had paraesthesia in his right arm. After calling the clinic with these complaints, he was sent to the closest emergency department, which turned out to be Bethesda National Naval Medical Center (BNNMC).

GBS can be caused by a common bacteria as well as viruses that cause food poisoning and those symptoms can mimic a viral syndrome. It is imperative that an adequate history be taken to determine if food poisoning is the cause of a patient's symptoms. Had an adequate history been taken from Mr. Hahn at Bolling Air Force Base on May 10, 2000, they would have learned that Mr. Hahn became ill from some food he ate in a restaurant. Such a history could have mandated closer follow-up and earlier treatment for GBS. The failure to take an adequate history and closely follow up Mr. Hahn with more extensive treatment breached the standard of care and caused injury to him.

After arriving at BNNMC on May 17, 2000 at 1115, Mr. Hahn had to be carried into the emergency room. Neurology was consulted and GBS was diagnosed. This was later confirmed by a spinal tap by Dr. Friedman, a neurology resident from WRAMC who was following Mr. Hahn. Given Mr. Hahn's condition, the standard of care required that intravenous immuno gamme globulin (IVIg) be immediately started and monitored for 5 days. The failure to do so violated the standard of care for treatment of GBS.

While at BNNMC, a bed opened at WRAMC and Mr. Hahn was transferred to WRAMC at 1650 on May 17, 2000.

Although the health care provider had a diagnosis early on May 17, 2000, no IVIg was administered until 1500 on May 18, 2000.

While at WRAMC, IVIg was started. Unfortunately, the ICU was full and Mr. Hahn was transferred back to BNNMC later on May 18, 2000. The order for IVIg from WRAMC specifically ordered treatment with the IVIg for 5 days. This is important because it takes 5 days to effectively treat the bacteria causing the GBS. The health care provider at BNNMC disregarded the written order from WRAMC and only gave Mr. Hahn IVIg until 1700 on May 19, 2000.

Rehabilitation Institute of Michigan
RM 822
261 Mack Blvd.
Detroit, MI 48201
313.966.0444
Fax 313.745.1063

The failure of the health care provider at BNNMC to give IVIg for a 5-day period violated the standard of care. Because GBS is a progressive neurologic disease, the earlier and more comprehensive the treatment, the better the outcome. The failure to timely diagnose and treat generally leads to a poorer long-term outcome.

Based on my experience, background, and training, it is my opinion that there were breaches in the standard of care in the diagnosis and treatment of Mr. Hahn's GBS. Further, those violations led to a substantially worse outcome in Mr. Hahn's condition. His current condition is more likely than not permanent.

Had Mr. Hahn been treated promptly with IVIg on May 17, 2000, over the required 5-day period, he likely would not have suffered any noticeable long-term neurological impairment. His gait and ability to walk likely would be normal or near normal. The failure to timely and appropriately treat Mr. Hahn's GBS led to his permanent neurologic functional deficits.

I hold all of the opinions stated in this report to a reasonable degree of medical certainty. These opinions are based on my review of the record, extensive experience with GBS, familiarity with the negligence standards of care concerning treatment of GBS, and my extensive personal experience with Mr. Hahn as a member of my research study.

Sincerely yours,

Jay M. Meythaler, M.D., J.D.
Professor & Chair
Dept. Physical Medicine and Rehabilitation
Wayne State University, School of Medicine
PM&R Specialist in Chief
The Detroit Medical Center

Rehabilitation Institute of Michigan
RM 822
261 Mack Blvd.
Detroit, MI 48201
313.966.0444
Fax 313.745.1063